UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

WAYMAN PATTERSON,

        Plaintiff,                       Case No. 2:14-cv-118

v.                                          Honorable Robert Holmes Bell

DANIEL H. HEYNS,

        Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* without immediate payment of the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Wayman Patterson, a state prisoner currently confined at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants MDOC Director Daniel H. Heyns and Deputy Director Thomas G. Finco. In his complaint, Plaintiff purports to bring a class action on behalf of all prisoners similarly situated to challenge the Incentives in Segregation Program (IISP). Plaintiff alleges that Defendants are responsible for the approval of policy directives that govern the operation of prisons in Michigan, including the establishment of the IISP at AMF.

> The goal of the Incentives in Segregation Program (IISP) is to motivate prisoners to demonstrate appropriate behavior by offering incentives that encourage positive adjustment. The IISP uses a six (6) stage progression of expectations and incentives to encourage appropriate behavior. Successful progression through the six stages will assist staff in recommending prisoners for release [from segregation] while maintaining a safe and secure environment. The Security Classification Committee and the Administration retain full responsibility and discretion for approving Segregation releases.
>
> Prisoners classified to Administrative Segregation will be afforded the opportunity to progress through the six stages of the program. Prisoners will be required to adhere to the requirements of each stage and may be provided with the incentives detailed in this Program Manual. All prisoners, unless determined differently by the Housing Unit Team and/or the Security Classification Committee, will start the program at Stage 2 and with positive behavior will advance through the stages to Stage 6.
>
> Prisoner's positive and negative behavior will be evaluated by each shift on a daily basis and recorded on the Record of Segregation Incentive Program Form. Documentation of negative behavior does not need to be in the form of a Major Misconduct. The Housing Unit Team will review these Records on a weekly basis. Prisoners who do not complete all requirements or abuse the incentives provided at each stage will be evaluated and may be placed at a lower stage based on the Housing Unit Team's recommendation. Prisoners who are

>considered to be high risk segregation placement may progress to Stage 6, but will not be considered for General Population unless approved by the Warden or higher authority where applicable.
>
>Prisoners will be required to complete Essays at Stages 2 through 6 and a Journaling Program at Stages 5 and 6. The Essays are important to the IISP and prisoners may be required to re-write their Essays if not appropriate.

*See* IISP Program Manual, docket #1-3, p. 2 of 8.

Minimal expectations at all six steps require prisoners not to threaten staff or other prisoners; to speak to staff without yelling, swearing or exposing themselves; to take a shower three times a week; and to clean their cells when supplies are passed. At Stage 1, prisoners are allowed to shower three times a week and to have one hour of yard time five days per week. Supplemental expectations are added at each step, including the writing of essays, not yelling at other prisoners or causing excessive noise, performing work duties in the unit, mentoring other prisoners, watching self-help videos, and working in a journaling program. Incentives are increased at each step, as well. A prisoner may purchase approved store items for payment of positive work performance at Stage 3. Once a prisoner reaches Stage 4, he is entitled to the use of a personal television. *Id.*, pp. 4-8 of 8.

Plaintiff claims that as part of the IISP, his television was confiscated and was not returned to him even when he was not under any sanctions. Plaintiff states that he should not be required to participate in IISP or to comply with the IISP standards in order to have his television or to purchase food items from the prisoner store. Plaintiff also asserts that officials at AMF failed to comply with specific requirements of the IISP. Plaintiff seeks declaratory relief.

**Discussion**

I. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the court notes that Plaintiff seeks to bring this action individually and on behalf of all others similarly situated, which the Court construes as a request for class certification. For a case to proceed as a class action, the court must be satisfied on a number of grounds, including the adequacy of class representation. *See* FED. R. CIV. P. 23(a)(4). It is well established that *pro se* litigants are inappropriate representatives of the interests of others. *See Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)); *see also Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008); *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003); *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001); *Howard v. Dougan*, No. 99-2232, 2000 WL 876770, at *1 (6th Cir. June 23, 2000); *Ballard v. Campbell*, No. 98-6156, 1999 WL 777435, at *1 (6th Cir. Sept. 21, 1999); *Marr v. Mich.*, No. 95-1794, 1996 WL 205582, at *1 (6th Cir. Apr. 25, 1996). Accordingly, because Plaintiff is an incarcerated, *pro se* litigant, the Court finds that he is not an appropriate representatives of a class. Therefore, the Court will deny Plaintiff's request for class certification.

The court further notes that Plaintiff lists prisoner Curtis Jackson as a plaintiff in this action. However, Mr. Jackson failed to sign the complaint. As noted above, Plaintiff Patterson is not an appropriate representative for prisoner Jackson. Therefore, Curtis Jackson is not a proper party to this action.

Plaintiff asserts that his due process rights were violated by his forced participation in the IISP. The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976). In *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 486-87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995).

The court concludes that the IISP requirements for segregation prisoners, as set forth above, do not rise to the level of an atypical and significant hardship. Therefore, Plaintiff's due process claims against Defendants Heyns and Finco are properly dismissed.

Plaintiff also asserts that his participation in the IISP violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with

"deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). Plaintiff's required participation in the IISP does not rise to the level of an Eighth Amendment violation.

With respect to Plaintiff's allegations concerning the failure of prison officials to comply with the procedures set forth in the IISP documents, he fails to state a claim of constitutional dimension. These alleged failures to comply with an administrative rule or policy do not themselves rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. Moreover, Plaintiff fails to name any of those officials as defendants in this action.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: October 23, 2014                    /s/ Robert Holmes Bell
                                           ROBERT HOLMES BELL
                                           UNITED STATES DISTRICT JUDGE